667 F.2d 1105
 UNITED STATES of America, Appellee,
v.
Truong Dinh HUNG, Appellant.
UNITED STATES of America, Appellee,
v.
Ronald Louis HUMPHREY, Appellant.
National Alliance Against Racist & Political Repression,
Amicus Curiae.
National Lawyers Guild, Center for Constitutional Rights, U.
S. Peace Council, Women's International League for
Peace and Freedom, Fund for Open
Information and
Accountability,
Inc.,
Amici Curiae.
UNITED STATES of America, Appellee,
v.
Ronald Louis HUMPHREY, Appellant.
UNITED STATES of America, Appellee,
v.
Truong Dinh HUNG, Appellant.
 Nos. 78-5176, 78-5177, 80-5230 and 80-5231.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 5, 1981.
Decided July 14, 1981.
 
 Michael E. Tigar, Washington, D.C. (John Mage, John J. Privitera, Washington, D.C., Marvin D. Miller, Alexandria, Va., on brief), for appellant David Truong.
 Warren L. Miller, Stein, Halpert & Miller, Mark W. Foster, Moore & Foster, Roger E. Zuckerman, Zuckerman, Spaeder & Taylor, Washington, D.C., on brief, for appellant Ronald Louis Humphrey.
 Justin W. Williams, U. S. Atty., Alexandria, Va. (Sara Criscitelli, Jerome M. Feit, William G. Otis, Robert J. Erickson, Paul J. Brysh, Elliott Schulder, David R. Homer, Ann T. Wallace, Washington, D.C., on brief), for appellee United States.
 O. Stephen Paganuzzi, Jr., Marshall Perlin, New York City, on brief, for amici curiae National Alliance Against Racist and Political Repression and other organizations.
 Before WINTER, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.
 PER CURIAM:
 
 
 1
 In a previous appeal we affirmed the judgments entered on defendants' convictions of espionage and related offenses but remanded the case to the district court for a determination of whether materials tardily produced by the government for inspection by the district court toward the end of the trial should have been produced for inspection by the defendants under the Jencks Act. 18 U.S.C. § 3500. We directed the district court to determine if the documents contained Jencks Act material, and, if so, whether their nonproduction was harmless error. We invested it with full authority to vacate the judgments and to grant a new trial if it found that Jencks Act material was withheld and the error was not harmless. United States v. Truong Dinh Hung, 629 F.2d 908 (4 Cir. 1980).
 
 
 2
 On remand the district court reviewed in camera the 540 documents submitted by the government. Of these, it extracted 30 which were arguably Jencks Act material and made them available to defense counsel under a protective order which prohibited counsel from divulging their contents to their clients or anyone else. After hearing argument from both sides, the district court ruled that most of the documents were not Jencks material. It found that three may have contained Jencks material and one may have contained exculpatory material which should have been provided to the defendants under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, the district court further ruled that the failure to produce these materials was harmless error. Accordingly it entered new judgments of conviction against both defendants.
 
 
 3
 We see no infirmities in the district court's rulings, and we affirm.
 
 
 4
 We agree with the district court that the allegedly exculpatory material, producible under Brady, was essentially a duplication of evidence that was made available to defendants prior to trial. While we have serious doubts that the withheld data was exculpatory, the fact remains that even if produced it would have told defendants nothing that they did not already know. As a consequence, any error in the failure to produce it was harmless.
 
 
 5
 We also agree with the district court that the nonproduction of the purported Jencks Act material was harmless error even if it is held to have been producible under the Act. The material consists of records made by a government agent of oral reports from Dung Krall, a CIA informant. According to defendants, the material is significant because it contains no mention of Truong whereas Krall's testimony at trial regarding the subject matter of the reports included a statement suggesting that Truong was a foreign agent.* We find little merit in defendants' contention. First, it does not appear that in making her oral reports Krall was asked any questions which would have generated any mention of Truong. The omission in the report would thus be a very weak ground for impeachment. This is especially true since neither Krall nor the officer to whom she reported had focused attention on Truong at the time the reports were made. Second, the government showed that in another report to a government investigating officer made soon after that sought to be produced, the witness did mention this defendant. Thus to the extent that the witness might have been impeached by the omission, she could have been rehabilitated by the other report. The witness was subjected to impeachment on numerous other grounds and the benefit to defendants of the additional impeachment, if any, is to our mind so slight that the judgments should not be disturbed.
 
 
 6
 Like the district court, we also believe that materials which defendants claim should have been produced under Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), provided evidence which was merely cumulative. At trial defense counsel exhaustively explored the fact that Krall was a paid government informant, that she had received a variety of benefits from the government for both herself and her family, and that she debated with her government employers about salary increases. Moreover, one of the officers to whom she reported testified that the officer who employed her told her that "her production and performance would be reviewed from time to time, and her salary would be adjusted accordingly ... (H)e also mentioned that there could be bonuses." Thus the jury was fully apprised that the amount of her compensation depended upon her ability to supply useful information. The materials at issue would have added nothing new to defendants' already substantial basis to argue that she was not a credible witness.
 
 
 7
 Finally, we are constrained to comment on the district court's protective order which prohibited counsel, when they were permitted to inspect documents to assist the district court in determining if they were Jencks Act materials, from disclosing their contents to their clients. Defendants contend that this restriction denied them their Sixth Amendment right to counsel and their Fifth Amendment right to a fair trial. We disagree. A court is authorized under the Jencks Act to determine ex parte whether items are properly required to be disclosed. 18 U.S.C. § 3500(c). The court therefore was not required to disclose these materials even to defense counsel unless it determined that the documents were discoverable under the Act. Thus, where the district court decides to make this determination as a result of an adversary process, it may validly prohibit counsel from communicating the contents of what is seen to their clients unless and until the district court rules that the materials must be produced.
 
 
 8
 Of course, in the usual case when production is ordered, a client has the right to see and know what has been produced. See, e.g., Geders v. United States, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). This case, however, was not the usual case. Here, in the case of defendants convicted under the espionage statutes, we ordered further proceedings after the trial was concluded to determine if error invalidating their convictions was made. The district court correctly concluded from the face of the record that prejudicial error did not occur, and it did so for reasons where the comments of defendants and their further testimony could not have been of any aid in reaching a decision. The lack of knowledge on the part of defendants and the absence of their participation, if error, was harmless.
 
 
 9
 AFFIRMED.
 
 
 
 *
 At least arguably, the conversation contained in the reports is not the one about which Krall testified at trial. Krall's testimony is ambiguous on this point