**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4738

CARL BENIT COOPER,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Falcon B. Hawkins, Chief District Judge.
(CR-95-206)

Argued: October 3, 1997

Decided: January 28, 1998

Before NIEMEYER and HAMILTON, Circuit Judges, and BOYLE,
Chief United States District Judge for the Eastern District of North
Carolina, sitting by designation.

_____

Affirmed by unpublished opinion. Chief Judge Boyle wrote the opinion, in which Judge Niemeyer and Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** Michael S. Seekings, Charleston, South Carolina, for
Appellant. Brucie Howe Hendricks, Assistant United States Attorney,
Charleston, South Carolina, for Appellee. **ON BRIEF:** J. Rene Josey,
United States Attorney, Charleston, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

BOYLE, Chief District Judge:

A jury convicted Carl Benit Cooper of conspiracy to commit bank robbery in violation of 18 U.S.C. § 371, bank robbery on September 24, 1994 in violation of 18 U.S.C. § 2113(b) and 18 U.S.C. § 2, armed bank robbery on October 11, 1994 in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2, using or carrying a firearm in the commission of a crime of violence in violation of 18 U.S.C. § 924(c) for the October 11 robbery and bankruptcy fraud in violation of 18 U.S.C. § 152 (concealment of assets). Cooper appeals his conviction on grounds that: (1) the bankruptcy fraud and bank robbery charges were improperly joined; (2) the district court erred in failing to grant his motion to sever the trial; (3) there was insufficient evidence to convict him of using or carrying a firearm during the commission of a crime of violence; and (4) the district court erred in denying his Motion to Exclude "Prior Bad Acts" evidence. We affirm.

FACTS

After retiring from the Army in 1993, Cooper moved to Summerville, South Carolina with his wife where they purchased a retirement home. Soon thereafter, Cooper began working for Pinkerton Security repairing NationsBank ATM machines. However, financial problems compelled Cooper and his wife to file for Chapter 13 bankruptcy protection in 1994. The bankruptcy trustee allowed Cooper and his wife to keep their retirement home but required them to report all disposable income to the trustee for the payment of creditors. Disregarding the precepts of their bankruptcy plan, Cooper and his wife made lump sum or double mortgage payments in July and August, 1994 without informing the trustee. They also continued to make substantial repairs and improvements to their home exceeding $13,000 in cost and often paid the suppliers and materialmen in full for their work. Neither the improvements made nor the money used to fund these improvements was reported to the trustee.

2

Shortly after Cooper's bankruptcy, NationsBank began suffering losses from its South Carolina ATM's. These losses were in excess of $207,000. Pinkerton logs linked the times and locations of the losses to circumstances when Cooper serviced or otherwise had access to those ATMs. These losses were not reported as robberies but were documented by Pinkerton as unaccounted-for shortages. On October 11, 1994, during what appeared to be a routine service call, Wilfred Rivers and an unindicted accomplice robbed Cooper and his partner, Nathan Williams, at gunpoint. Williams was bound by duct tape, handcuffed and forced into the Pinkerton van while Cooper, appearing frightened, gave Rivers and his accomplice over $47,000 from the ATM. A video camera on the ATM captured the robbery in progress.

Despite Cooper's apparent resistance during the robbery, the FBI's investigation linked Cooper to the robbery by virtue of his relationship with Rivers. The ATM video of the robbery showed that Cooper never acknowledged knowing Rivers when they encountered each other that night. Cooper also initially denied knowing Rivers and maintained his innocence during FBI questioning on November 9, 1994. After approximately 15-20 minutes of additional questioning, Cooper recanted and admitted that he and Rivers were friends and neighbors. Cooper also admitted that he recognized the car Rivers drove to the robbery site as his (Rivers) wife's car. This evidence proved to be the cornerstone of the government's conspiracy charge and theory that the October 11 robbery had been a"staged" robbery arranged by Cooper and Rivers.

Cooper and Rivers were subsequently indicted on January 11, 1995 on counts of conspiracy to commit armed bank robbery, bank robbery, armed bank robbery, and use of a firearm during a crime of violence. On March 5, 1995, a Superseding Indictment was returned adding three counts of criminal bankruptcy fraud against Cooper and his wife. Although two of these counts were dismissed by the government prior to trial, Cooper was tried on one count of fraudulently concealing assets from the bankruptcy trustee. On June 1, 1995, Cooper filed his Motion to Sever the bankruptcy charge from the robbery charges, which the court denied. A jury trial was then held and Cooper was convicted on all counts.

DISCUSSION

1. Joinder of Bankruptcy Fraud and Bank Robbery Charges

Cooper first claims that the government's indictment improperly joined the bankruptcy fraud and bank robbery charges thereby depriving him of the opportunity to present testimony and witnesses in his defense. We disagree. Rule 8(a) of the Federal Rules of Criminal Procedure provides that separate offenses may be joined if they constitute parts of a common scheme, that is, if they involve acts united by some "substantial identity of facts or participants", United States v. Porter, 821 F.2d 968, 972 (4th Cir.), cert. denied, 485 U.S. 934 (1988), or if the evidence supporting the separate counts overlaps so that the same evidence would be admissible at separate trials, United States v. Amato, 15 F.3d 230, 237 (2d Cir.), aff'd on rehearing, 32 F.3d 704 (1994).

The evidence clearly demonstrates that the bankruptcy fraud and bank robbery charges were parts of a common scheme. Cooper's plan involved stealing money from the ATM's he serviced and, with the intent to use this money to repair and improve his home, concealing these assets from the bankruptcy trustee. One offense stemmed from the other. His bankruptcy provided an impetus for the bank robberies which in turn gave rise to his bankruptcy fraud. There is also a significant overlap in evidence regarding Cooper's motive for committing both the bank robberies and bankruptcy fraud. Cooper had an opportunity to acquire significant sums of money from his access to the ATMs and a plan for using and concealing those assets from the bankruptcy trustee. For these reasons, we conclude that initial joinder was proper under Rule 8.

2. Denial of Motion to Sever

Cooper argues that the district court abused its discretion by failing to grant his motion to sever, impeding his ability to present an effective defense. This argument is without merit. Notwithstanding proper joinder under Rule 8(a) and a recognition that Rule 8 "authorizes some prejudice" against a defendant, United States v. Turoff, 853 F.2d 1037, 1043 (2d Cir. 1988), Rule 14 of the Federal Rules of Criminal Procedure provides that, if a defendant is substantially prejudiced by

4

joinder of offenses, a district court may order separate trials. Fed. R. Crim. P. 14. Determining whether to sever a trial involves weighing trial efficiency considerations against the possible unfairness to a defendant. See United States v. Santoni, 585 F.2d 667, 674 (4th Cir.), cert. denied, 440 U.S. 910 (1979). A court's decision denying severance is reviewed under an "abuse of discretion" standard and will be disturbed only upon showing that a miscarriage of justice resulted. Id.

The district court did not abuse its discretion in denying the defendant's motion to sever. The possibility of prejudice to Cooper at trial was greatly diminished by the substantial overlap of evidence. See United States v. Jamar, 561 F.2d 1103, 1106 (4th Cir. 1977). Characterizing any remaining prejudice as "substantial" would be mere conjecture in light of Cooper's failure to specifically identify the content of his prospective testimony. A bald assertion that the trial court's denial of his severance motion prevented him from testifying regarding one charge because it would have incriminated him on the other is insufficient by itself to show manifest injustice. See United States v. Larouche, 896 F.2d 815, 831 n6 (4th Cir. 1990). This analysis, coupled with the district court's cautionary charge to the jury, suggests Cooper was not substantially prejudiced by the joint trial.

3. Sufficiency of Evidence on § 924(c) Charge

Cooper next questions the sufficiency of the government's evidence on his 18 U.S.C. § 924(c) charge. A conviction will be upheld on appeal "if there is substantial evidence, taking the view most favorable to the Government, to support . . . the conviction." United States v. Guay, 108 F.3d 545, 553 (4th Cir. 1997) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)).

Cooper was charged with violating 18 U.S.C. § 924 for Rivers' use of a firearm during the October 11 armed robbery. Foreseeable acts committed in furtherance of a conspiracy are attributable to coconspirators. See Pinkerton v. United States, 328 U.S. 640 (1946). The government was required to prove not only that Rivers used a firearm during or in relation to the armed bank robbery,* but also that Cooper could reasonably foresee such use.

_____

*Satisfying the "during or in relation to" element of § 924(c) simultaneously satisfies the "in furtherance" prong of the Pinkerton test.

5

It is undisputed that Rivers, Cooper's co-conspirator in the October 11 armed robbery, "actively employed" a firearm during the commission of that offense, satisfying § 924(c) and the Supreme Court's definition of "use" in Bailey v. United States , 116 S.Ct. 501, 508 (1995). The question is whether Cooper reasonably foresaw such use. Cooper claims that the evidence only established his intent to stage a "safe" robbery involving the use of handcuffs, not firearms and that therefore, he did not contemplate Rivers' use of a firearm during the robbery. This argument fails in light of the substantial evidence adduced at trial.

Even if Rivers' use of a firearm during the staged robbery was not specifically planned, it was certainly foreseeable to Cooper, particularly in light of the fact that (1) Cooper knew his partner Williams carried a service revolver at all times and would be willing to use it if necessary, and (2) the genuineness of the robbery would more readily be called into question if Cooper and his partner were robbed by two men armed only with handcuffs. We conclude that this evidence, viewed in a light most favorable to the prosecution, supports Cooper's conviction on this charge.

4. Admission of Rule 404(b) Evidence

Cooper argues that the district court committed reversible error by admitting Calvin Tucker's testimony regarding instances of past larceny. We disagree. Rule 404(b) of the Federal Rules of Evidence provides that evidence of prior crimes, wrongs or acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . ." but not to prove a defendant's character in order to show he acted in conformity with the charged offense. Fed. R. Evid. 404(b). This Circuit has adopted an "inclusive" interpretation of Rule 404(b) so that all necessary and reliable evidence of prior bad acts is admissible except that which is offered to prove propensity or criminal disposition. United States v. Sanchez, 118 F.3d 192, 195 (4th Cir. 1997).

Tucker testified that he accompanied Cooper when they stole lumber from construction sites for use on Cooper's home. Contrary to what Cooper alleges, Tucker's testimony was not offered to prove his character but to support the government's theory that Cooper was des-

6

perate to hold onto and improve his retirement home by any means available, including robbing ATMs, concealing assets and stealing construction supplies to avoid out-of-pocket costs. His testimony was not cumulative or redundant, rather it helped to create an additional link in the government's chain of events establishing Cooper's scheme.

Even if "prior bad acts" evidence satisfies Rule 404(b), it may still be excluded under Rule 403 if its probative value is substantially outweighed by its prejudicial effect. Fed. R. Evid. 403. The evidence here was probative of the government's theory that Cooper was prepared to break the law to realize his ambition of completing his retirement home despite his bankruptcy. Extensive evidence presented at trial regarding Cooper's role in the bank robberies, including actual footage of the robbery by the ATM video camera and Cooper's conflicting statements during FBI interrogation, makes it improbable that Tucker's testimony was unduly prejudicial under the circumstances. Finally, introduction of Tucker's testimony, although prejudicial insofar as it inculpated Cooper, did not substantially and unfairly sway the jury in light of the limiting instructions given by the court obviating any residual prejudice. See United States v. Aramony, 88 F.3d 1369, 1378 (4th Cir. 1996), cert. denied, 117 S.Ct. 1842 (1997). Accordingly, the district court did not abuse its discretion in admitting this evidence.

CONCLUSION

Finding no error, we affirm the conviction.

AFFIRMED