**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                        No. 96-4924

DAMION NELSON,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CR-95-51)

Argued: January 30, 1998

Decided: April 17, 1998

Before HAMILTON and LUTTIG, Circuit Judges, and
VOORHEES, United States District Judge for the
Western District of North Carolina, sitting by designation.

_____

Affirmed in part and dismissed in part by unpublished per curiam
opinion.

_____

**COUNSEL**

**ARGUED:** Joseph Thomas Love, Jr., Charlottesville, Virginia, for
Appellant. Nancy Spodick Healey, Assistant United States Attorney,
Charlottesville, Virginia, for Appellee. **ON BRIEF:** Robert P.
Crouch, Jr., United States Attorney, Charlottesville, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Damion Nelson was convicted on charges of conspiracy to commit bank robbery, aggravated bank robbery, and using or carrying a firearm during and in relation to a crime of violence. Nelson appeals the exercise of federal jurisdiction over him as a juvenile pursuant to 18 U.S.C. § 5032 and other issues related to his conviction and sentencing. Finding the defendant's assignments of error meritless, we affirm his conviction and sentence.

I.

On Friday, August 4, 1995 at approximately 12 noon, sixteen-year-old Damion Nelson, Richard Suarez, and two other co-defendants known as "Killer" and "Steve" entered a branch office of Jefferson National Bank in Charlottesville, VA. Suarez stood inside the door displaying a sawed-off shotgun, while Nelson, Killer, and Steve jumped the counter. Nelson and Steve brandished handguns, ordering the employees and patrons to look away or get down and not to look at them. The four succeeded in stealing $192,000 from the bank.

As they were fleeing, Suarez dropped the sawed-off shotgun, which was later recovered by the police. After the robbery, Nelson and several co-defendants went to a hotel room where they distributed the money. A total of ten co-defendants were involved in the planning and execution of this armed bank robbery, some of them from the New York area and some from the Charlottesville area.

On October 23, 1995, Nelson was arrested by the New York City Police Department on unrelated state charges. Based upon an outstanding federal warrant for Nelson, New York authorities turned him over to the FBI on the following day. After being advised of his rights and signing a waiver, Nelson provided a statement admitting that he

acted as a "lookout" during the August 4, 1995 robbery of the Jefferson National Bank in Charlottesville, VA.

On October 25, 1995, the Government filed a juvenile information charging inter alia aggravated bank robbery and conspiracy. At that time, the Government also filed a certification pursuant to 18 U.S.C. § 5032.

On November 30, 1995, the district court held a transfer hearing and found federal jurisdiction over the case. It also determined that the defendant should be prosecuted as an adult pursuant to the mandatory transfer provisions of 18 U.S.C. § 5032. Nelson was subsequently indicted along with ten co-defendants of charges stemming from this armed bank robbery.

Following a five day trial, the jury returned a guilty verdict convicting Nelson on all three counts. He was subsequently sentenced by the district court to sixty months on the conspiracy to commit bank robbery charge, ninety-six months to run concurrently on the aggravated bank robbery charge, with a consecutive 120 months on the use or possession of a firearm during and in relation to a crime of violence charge.

Nelson now appeals his conviction and sentence on several grounds.

II.

The defendant's main argument is that the district court improperly held that a case arising from an armed bank robbery creates a substantial federal interest warranting the exercise of federal jurisdiction over him pursuant to 18 U.S.C. § 5032.

The district court in this case originally held that the certification filed pursuant to 18 U.S.C. § 5032 was not reviewable. Following the issuance of our decision in United States v. Juvenile Male #1, 86 F.3d 1314, 1319 (4th Cir. 1996), in which a majority of the Court held such certifications to be reviewable, the district court reconsidered its prior ruling, held an evidentiary hearing, and ultimately reaffirmed its decision.

3

The defendant argues that there is not a substantial federal interest in this case because this was just an ordinary bank robbery. He contrasts the ordinary bank robbery with offenses where substantial federal interest exists including assaults on, or assassination of, federal officials, aircraft hijackings, kidnappings, major espionage or sabotage, etc. United States v. Male Juvenile, 844 F.Supp. 280, 283 (E.D. Va. 1994) (quoting S. Rep. No. 225, 98th Cong., 2d Sess. 389, reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3529).

The defendant does not argue that bank robbery can never involve a substantial federal interest. Rather, he argues that no substantial federal interests were implicated in this case because no one was injured in the bank robbery, there was no allegation that the loss of approximately $192,000 affected the liquidity of the FDIC, and the bank robbery was not part of a larger criminal enterprise.

Contrary to the defendant's assertion, we find a substantial federal interest to exist in this case. In 1994, Congress lowered to thirteen the age at which a juvenile may be prosecuted as an adult when he possesses a firearm during a bank robbery. This amendment served explicitly to expand the scope of federal jurisdiction over juveniles who commit armed bank robberies. Violent Crime and Control and Law Enforcement Act of 1994, Pub. L. No. 103-322.

The circumstances of this case also compel a finding of a substantial federal interest. Bank robbery is a federal offense and the harshness of the penalty for aggravated bank robbery and use of a weapon in connection with it favor a finding of a substantial federal interest. Further, the defendant crossed state lines to commit the bank robbery, succeeded in taking a large amount of money, and was ultimately one defendant of an eleven defendant case where there was a significant interest in trying all defendants together. The defendant's extensive prior criminal contacts also resulted in a mandatory transfer to adult status pursuant to 18 U.S.C. § 5032, further evidencing the appropriateness of exercising federal jurisdiction in this matter. For these reasons, the district court did not err in finding a"substantial federal interest" sufficient to warrant federal jurisdiction over this case.

III.

We next examine Nelson's claims that the district court erroneously denied his motion to suppress his confession based on a lack of

4

voluntariness, or alternatively, on the basis that he did not make a knowing, intelligent, and voluntary waiver of his Miranda rights.

On appeal, the trial court's determination regarding voluntariness is reviewed de novo. However, the "findings of fact on the circumstances surrounding the confession will be accepted unless clearly erroneous." United States v. Guay, 108 F.3d 545, 549 (4th Cir. 1997). In determining the voluntariness of a statement, the court looks to the "totality of the circumstances." Id. The crucial issue is whether "the government's agents have overborne the subject's will or have left his capacity for self-determination critically impaired." Id.

The defendant asserts that at the time of the alleged confession he was tired and hungry, that he was handcuffed with one hand to a bar inside the interview room, that he was a juvenile with only a 9th grade education and a full scale I.Q. of 80, and that he was told by the agents that it would be better for him if he gave a statement. Given these assertions, Nelson argues his will was overborne and his statement should be suppressed.

At the evidentiary hearing on this matter, FBI Special Agent Cocuzzo testified that the defendant mentioned being sleepy, but was awake and alert en route to the FBI office for questioning. He testified that he bought the defendant a candy bar and a Coke prior to the interview and that the interview itself lasted approximately 20 minutes. He further stated that the interview was not heated and no voices were ever raised.

The defendant, a seventeen-year-old with a ninth grade education, testified that he was hungry at the time of the interview and that the agents told him it would be better if he made a statement. The court elicited testimony from the defendant that he had refused breakfast when it was offered to him at central booking prior to the interview with the agents.

Based on the record before us, the district court's findings that the combined circumstances of sleep deprivation, hunger, and nervousness were not sufficient to overcome the defendant's will are supported in the record and are not clearly erroneous. Accordingly, we

5

find that the district court properly denied the defendant's motion to suppress.

The defendant also alleges that the district court erred in denying defendant's motion to suppress his statement on the basis that the defendant did not make a knowing, intelligent, and voluntary waiver of his Miranda rights. Nelson's argument is that he did not have a full understanding of his Miranda rights and did not realize the consequences of waiving them. Therefore, he claims, his waiver was not valid and the district court should have suppressed his statement.

The evidence in the record is quite to the contrary. First, Dr. Hawk, who conducted a psychological evaluation at the defendant's request concluded that the defendant (1) had the "capacity to accurately read and comprehend the core elements of the Miranda warning," (2) had a "clear awareness of the benefit of securing counsel and the potentially negative outcomes associated with making a statement to the police," and (3) "is not particularly suggestible." Secondly, the defendant in his own testimony admitted both reading and signing the Miranda rights/waiver of rights form provided by Agent Cocuzzo at the time of the interview. In addition, both the New York detective who first interviewed him and FBI Agent Cocuzzo testified that they advised the defendant of his rights.

Based on this evidence, we find that the district court's findings in regard to the circumstances of the Miranda warnings are supported by the record and are not clearly erroneous. Accordingly, the defendant's Miranda waiver was both knowing and voluntary, and the district court correctly denied the motion to suppress.

IV.

We now turn to the defendant's challenge to the sufficiency of the evidence underlying his convictions for conspiracy to commit bank robbery, aggravated bank robbery, and using or carrying a firearm during and in relation to a crime of violence.

The standard for the appellate court in reviewing the sufficiency of the evidence is whether "viewing the evidence in the light most favor-

6

able to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982) (citations omitted).

The defendant argues that no physical evidence was introduced, that none of the bank employees or customers were able to identify him, that his statement was not tape recorded or reduced to writing, and that the testimony of co-defendants who all had plea agreements with the Government was insufficient to support a finding of guilt.

At trial, the Government offered the testimony of the co-defendants, evidence that two of the defendant's fingerprints were found on the getaway car, and the defendant's own confession, under-stated though it was, of his involvement in the bank robbery. The defendant's assertion that no physical evidence was introduced and that there was no identification of him by bank employees or customers is meritless in light of co-defendant testimony establishing all the elements of the crimes charged. The defendant attacks the co-defendants' testimony as not credible. However,"it is for the jury and not the appellate court to weigh the evidence and judge the credibility of the witnesses." Id. Further, "this circuit recognizes that the testi-mony of a defendant's accomplices, standing alone and uncorrobo-rated, can provide an adequate basis for conviction." United States v. Burns, 990 F.2d 1426, 1439 (4th Cir. 1993) (citations omitted).

We, therefore, find that sufficient evidence was introduced at trial from which the jury could have reasonably concluded that the essen-tial elements of all three crimes were met.

V.

The defendant also challenges two issues relating to his sentence. He argues that the district court improperly calculated his criminal history when it included two points for a misdemeanor juvenile adju-dication for petty larceny that he denied committing and that was not supported by fingerprint evidence.

In reviewing a sentence imposed by the district court, "[t]he court of appeals shall give due regard to the opportunity of the district court

7

to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e).

In this case, the defendant took the stand at the sentencing hearing and denied that he was found guilty of an attempted petty larceny charge listed in the pre-sentence report. The Government offered the testimony of Rob Harper, U.S. Probation Officer, that the conviction came from certified records of the State of New York. Other information regarding the conviction, including the birthdate and address of the perpetrator, matched like data of the defendant. The defendant argues that the court should not have relied on these records because they were unsupported by fingerprints.

The defendant has the burden of showing the conviction's inapplicability and his denial in this case rings hollow in light of the contrary proof. We, therefore, find that the district court's determination that the defendant committed the attempted petty larceny is not clearly erroneous and we affirm.

The defendant also contends that the district court erred in denying him a downward departure because he was a juvenile at the time of the crime and had a low average I.Q. The refusal of a district court to depart is not reviewable on appeal absent a mistaken conclusion by the district court that it lacked authority to depart. United States v. Dorsey, 61 F.3d 260, 263 (4th Cir. 1995), cert. denied, 116 S.Ct. 732 (1996); United States v. Bayerle, 898 F.2d 28, 31 (4th Cir. 1990). Finding no evidence that the district court misunderstood its authority, we dismiss this assignment of error.

AFFIRMED IN PART; DISMISSED IN PART

8