**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                                  No. 01-4109

KYMBERLI PARKER,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CR-00-374-DKC)

Argued: June 4, 2001

Decided: August 27, 2001

Before WIDENER, TRAXLER, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Traxler and Judge Gregory joined.

## COUNSEL

**ARGUED:** Sean Robert Day, College Park, Maryland, for Appellant.
James Marton Trusty, Assistant United States Attorney, Greenbelt,
Maryland, for Appellee. **ON BRIEF:** Stephen M. Schenning, United
States Attorney, Greenbelt, Maryland, for Appellee.

**OPINION**

WIDENER, Circuit Judge:

On November 8, 2000, Kymberli Parker was convicted by a jury on a single count of knowingly providing ammunition to a convicted felon, her brother Tracy, in violation of 18 U.S.C. § 922(d)(1). She now appeals, raising several issues. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I.

On March 8, 2000, ATF agents observed Kymberli Parker, age 23, make a purchase at the Realco Gun Shop in Forestville, Maryland, return to her automobile, and speak on a cell-telephone. The agents were conducting a surveillance of the store in an effort to prevent guns and ammunition purchased in that State from being taken into Washington, D.C. ATF agents next observed a meeting of Kymberli and Tracy at which Kymberli transferred to her brother the merchandise from the store, and he paid her for it. When agents then attempted to stop Tracy Parker's vehicle, he resisted, assaulted an agent, and was shot before he was arrested. After Tracy Parker was arrested, the agents searched his vehicle and found the 50 rounds of .38 caliber ammunition purchased for him by his sister.

Early the next day, because the vehicle observed at the gun store was registered to Kymberli Parker, six or seven ATF agents went to her home some time around 5:30 a.m. in order to question her and to look for evidence. They did not have a warrant. Shortly after the agents arrived, Parker's grandmother came out of the house on her way to work. Believing the grandmother to be Kymberli, ATF agents ordered her from her car, apparently at gunpoint, and handcuffed her. The agents assert, and the district court found, that Kymberli's grandmother consented to the agents' request that they be admitted to the house. The grandmother denied this and maintained that agents took her keys without her consent. The district court also credited the testimony of Kymberli's grandfather, who testified that he met the agents at the open front door of his house and admitted them at their request.

The officers then gathered at the kitchen table with the grandfather and Kymberli's aunt, who also lived at the home. Kymberli's grandfather eventually signed a form consenting to a search of his residence. Although the agents denied it, Kymberli's grandfather testified at a suppression hearing and at trial that he signed only after ATF agents said that if he refused they would get a warrant, bring in their dogs, and tear up the house. A search of the family's home and automobiles revealed no contraband.

Shortly after the agents entered the house, they asked to see Kymberli, who was then in her bedroom in the home's basement, having earlier been awakened and upset by a telephone call from her mother explaining that her brother had been shot. Kymberli was clothed in a nightshirt and put on a robe before joining the agents and her grandfather and aunt in the kitchen. Additional agents and sheriff's deputies entered and left the house at different times. The grandmother was eventually taken out of handcuffs and readmitted to the home.

After 20 minutes or so in the kitchen, the agents asked to speak with Kymberli privately, and her aunt pointed out to the agents a bedroom for this purpose. The district court found that two agents escorted Parker to the room. The door to the room was closed or nearly closed during the interview, which lasted approximately 30 minutes. One agent sat on a chair, and at least one agent stood against a wall of the 9' x 11' room, while Kymberli sat on the bed. During the interview, Kymberli's aunt entered the room twice to speak briefly to her, and Kymberli did not leave the room or request to do the same. An agent, testifying at the suppression hearing, said that had Kymberli attempted to do so, she would not have been allowed to leave the house, but would have been allowed to leave the bedroom. Parker was not handcuffed, and at some point during the interview she apparently was informed that she was not under arrest. It is undisputed that Parker was not given a *Miranda* warning. Eventually, an agent wrote out a statement, which Parker reviewed and signed, in which she confessed to the elements of the crime of knowingly providing ammunition to a convicted felon in violation of 18 U.S.C. § 922(d)(1), a crime for which she was indicted on July 31, 2000.[1]

---

[1]Under 18 U.S.C. § 922(d)(1), it is "unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing

On September 28, 2000, the district court held a hearing on Parker's motion to suppress her statements. At the conclusion of the suppression hearing, the district court ruled that because the events took place outside of Kymberli's presence, and it was not shown that she knew of the events at the time she confessed, evidence about how the agents came to be admitted into the house was irrelevant to the statements Parker challenged, and this evidence was not allowed in evidence at trial. The district court also found that the agents had consent to enter and to search the home. Finally, the district court found that although Parker was not given a *Miranda* warning, she was not entitled to a *Miranda* warning because she was neither under arrest nor in custody to the extent that a *Miranda* warning was necessary.

Parker's two-day jury trial began on November 7, 2000. Kymberli, who had completed two years of college, admitted twice visiting her brother when he was incarcerated but denied ever knowing what crime he had been convicted of. She was convicted on a single count of the unlawful sale or transfer of ammunition to a convicted felon in violation of 18 U.S.C. § 922(d)(1).

## II.

### A.

We first consider this appeal of the district court's denial of the motion to suppress. Miss Parker argues that she was in custody for *Miranda* purposes during her interview with ATF agents, and, because the warnings were not given, her statements should have been suppressed.

We review the district court's findings of fact on a motion to suppress for clear error. *United States v. Rusher*, 966 F.2d 868, 873 (4th Cir. 1992). We review *de novo* the district court's legal conclusions on a motion to suppress. *United States v. Rusher*, 966 F.2d at 873.

or having reasonable cause to believe that such person . . . is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year. See 18 U.S.C. § 922(d)(1).

In order to protect the right granted by the Fifth Amendment that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself," U.S. Const. amend. V, the Supreme Court in *Miranda* adopted prophylactic procedural rules that must be followed during custodial interrogations. See *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). In general, any statements elicited from a suspect in violation of these rules are inadmissible in the prosecution's case-in-chief. See *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam). Absent formal arrest, *Miranda* warnings only apply "where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam). An individual is in custody for *Miranda* purposes when, under the totality of the circumstances, "a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).

The facts in this case do not demonstrate that Parker's freedom of action was curtailed to such a degree. The district court found that Parker was told she was not under arrest. She was not handcuffed or otherwise restrained, and the agents did not draw their weapons in her presence. She was also in her own home during the questioning, and one of her relatives, at the relative's request, entered the interview room on two occasions during the questioning. She was not forced to enter the room with the officers, and she was never told that she was not free to leave.

The fact that one of the agents testified at the suppression hearing that they likely would have arrested Parker had she attempted to end the interview and leave the house does not successfully undercut the holding of the district court that Parker was not under the functional equivalent of arrest during questioning. Custody determinations do not depend on the subjective views of either the interrogating law enforcement officers or of the person being questioned, but depend instead the objective circumstances of the interrogation. *Stansbury v. California*, 511 U.S. at 323. The agent's unarticulated views at the time Parker was being questioned is of little weight. The relevant inquiry is how a reasonable man would have understood the suspect's position at the time. *Berkemer v. McCarty*, 468 U.S. at 442. Thus, we conclude that the district court did not err when it declined to suppress Parker's statements for failure to administer *Miranda* warnings.

## B.

Parker next maintains that the district court committed reversible error when it ruled inadmissible evidence that agents handcuffed her grandmother in the home's driveway after the agents had apparently pointed their guns at her. Parker also maintains that the jury should have been able to hear her grandmother's testimony that agents, without consent, took her house keys for the purpose of breaking into the house. Parker argues this information would have been relevant, under Fed. R. Evid. 401, to the voluntariness of her confession in that it would have shed light on whether the agents were overzealous inside the home as they were outside the home.

We review the district court's decision as to relevance for an abuse of discretion. *United States v. Zandi*, 769 F.2d 229, 237 (4th Cir. 1985).

Here, the district court explained its ruling excluding Kymberli's grandmother's testimony about her encounter with the ATF agents as follows:

> What other people may have been exposed to is not relevant. What happened out on the front lawn is not relevant unless you connect it to what Ms. Parker was aware of prior to the time she gave the statement. . . . If it's something she was told later or learned later, it is irrelevant. It only matters for this jury to help them determine whether her statement was voluntary or not.

Thus, the district court reasoned that in order for evidence of what happened to her grandmother to be probative of the voluntariness of Parker's statements, Parker had to have been aware of the events before she made those statements. Because Parker was in the basement of the home when the confrontation in the driveway occurred, and because there was no testimony that Parker had any knowledge of the manner in which her grandmother had been treated before she made the challenged statements, the district court found that the evidence was therefore irrelevant.

Courts making determinations of whether a defendant's will has been overborne or his capacity for self-determination critically impaired must consider the "totality of the circumstances," including the characteristics of the defendant, the setting of the interview, and the details of the interrogation. *United States v. Braxton*, 112 F.3d 777, 781 (4th Cir. 1997). But Parker's purported reason for admitting the evidence, to show that agents who were overzealous outside the home likely also overbore her will during the interview, fails, as she does not allege that the agents' conduct during the interview was abusive. Indeed, she testified at trial that the agents who interviewed her did not yell at or threaten her or display to her their weapons. Thus, in limiting evidence to "what Ms. Parker was aware of prior to the time she gave the statement," the district court's reasoning was not arbitrary or irrational. Accordingly, we are of opinion the court's decision to exclude the evidence was not an abuse of discretion.

C.

Kymberli next alleges the district court erred by not requiring the government to prove the continuing validity of Tracy Parker's felony conviction. At trial, the government offered a certified copy of Tracy Parker's conviction, in the Circuit Court for Prince George's County, Maryland, for possession of cocaine with intent to distribute.[2] The government also introduced for the record a certificate of non-pardon from the state of Maryland and a certificate of non-restoration of civil rights from the Department of the Treasury, both dated some eight months after Parker had been arrested and less than two weeks before Parker's trial.

Kymberli argues that because "in Maryland a judge may modify or erase a conviction at any time," the government should have been required to prove that the Maryland trial court in which Tracy Parker was convicted had not voided his conviction.

Presumably, she refers to Md. Code Ann. Art. 27, § 641 and Md. Rule 4-345 for her assertion that Tracy Parker's conviction could

---

[2]Tracy Parker was sentenced, on September 8, 1998, to three years incarceration, with two years suspended, followed by two years of probation.

have been "modified or erased" by the trial court which entered a judgment against him. Under Md. Rule 4-345, a trial court has "revisory power and control over a sentence upon a motion filed within 90 days of its imposition." Md. Rule 4-345(b). Under Md. Code Ann. Art. 27, § 641, after an individual pleads guilty or nolo contendere or is found guilty, the court, in its discretion, may stay the entry of judgment, defer further proceedings, and place the defendant on probation. See Md. Code Ann. Art. 27, § 641(a). Under this section, a defendant who successfully completes his term of probation could then be discharged without a judgment of conviction and has not been convicted "for purposes of any disqualification or disability imposed by law because of conviction of crime." See Md. Code Ann. Art. 27, § 641(c); see also *Myers v. Maryland*, 496 A.2d 312, 315 (Md. 1985) (explaining that defendant who had been found guilty of perjury and then been placed on probation prior to judgment pursuant to Md. Code Ann. Art. 27, § 641 was not disqualified from testifying even though her term of probation was not yet completed).

Thus, we assume for the purposes of this question that both Md. Rule 4-345 and Md. Code Ann. Art. 27, § 641 could have operated together so that, after Tracy Parker had been sentenced, effective September 8, 1998, the trial court that entered judgment against him could have retroactively suspended entry of that judgment and placed him on probation before entry of judgment. If that had been the case prior to the day his sister purchased ammunition for him, Tracy Parker would not have been a individual convicted of "a crime punishable by imprisonment for a term exceeding one year" under 18 U.S.C. § 922(d)(1) as defined by 18 U.S.C. § 921(20),[3] and thus Kymberli

---

[3]18 U.S.C. § 921(20) defines the predicate felonies punishable under § 922(d)(1) and § 922(g)(1) as follows:

The term "crime punishable by imprisonment for a term exceeding on year" does not include—

(A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or

(B) any state offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

Parker would not have violated the law when she transferred ammunition to her brother.

Kymberli argues that the district court erred in not requiring the government to prove at trial that the Maryland circuit court did not retroactively impose probation prior to judgment in Tracy Parker's case and cites *United States v. Essick*, 935 F.2d 28 (4th Cir. 1991), as authority. *Essick* concerned a federal prosecution in North Carolina under 18 U.S.C. § 922(g)(1), which forbids certain convicted felons from possessing firearms or ammunition, just as § 922(d)(1) forbids knowingly transferring firearms or ammunition to these felons. *United States v. Essick*, 935 F.2d at 29. The predicate offense for Essick's prosecution under § 922(g)(1) was a North Carolina felony drug conviction more than five years earlier. The government maintained that in order to prove the predicate offense, it needed only to prove that Essick had previously been convicted of a felony. The government argued that the defendant could then bring forward evidence of an affirmative defense: that Essick had subsequently had his civil rights, including the right to possess a firearm, restored. However, North Carolina law automatically restores to a convicted felon limited rights to possess firearms five years after his unconditional release from state supervision. See *United States v. Essick*, 935 F.2d at 30 (discussing North Carolina firearms statutes). In *Essick*, we therefore decided that if the purported predicate offense for a § 922(g)(1) prosecution is a North Carolina felony that occurred more than five years before the § 922(g)(1) offense, the government could not assume, but had to prove, the "continuing vitality" of the state felony. *United States v. Essick*, 935 F.2d at 31.

However, as we recognized in another felon-in-possession case out of North Carolina district court, *United States v. Thomas*, 52 F.3d 82

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

(4th Cir. 1995), the holding in *Essick* is limited to cases in which the underlying North Carolina predicate felony occurred more than five years prior to the defendant's firearms offense. *United States v. Thomas*, 52 F.3d 82, 85 (4th Cir. 1995). In *Thomas*, the defendant brought a challenge under *Essick* and argued that the government should have been required to prove the continuing vitality of his previous felony conviction. However, Thomas's previous felony conviction was less than a year old as charged in a violation of § 922(g)(1). Thus, because it could not be assumed that Thomas's civil rights had been restored, the government did not have the burden of proving that fact independently. *United States v. Thomas*, 52 F.3d at 85.

In essence, Kymberli would have us treat the question of the continuing vitality of a felony conviction under Maryland law as an element of a § 922(d)(1) prosecution. When her objection was made in the district court, without announcing any broad, general rule, the district court took the correct approach, and remembering that the date of March 8th was the date Kymberli had delivered the ammunition to Tracy, made the following statement:

> It doesn't matter if it happened in the last week. It only matters if it happened before March 8, 2000, and this would have indicated had there been some such change in the sentence as of that date.

So the district court gave Kymberli the benefit of the rule for which Kymberli had asked.

The certified copy of the conviction of Tracy Parker is of a court order in the Circuit Court for Prince George's County, Maryland dated September 9, 1998 and shows only his conviction and sentence, effective September 8, 1998, without indicating any remission thereof. The question is whether under Maryland law the evidence in the case is sufficient to submit to a jury that the condition of Tracy Parker's conviction on September 9, 1998 continued to exist on March 8, 2000. Under Maryland law, unlike North Carolina law applicable in *Essick*, there is no period after which a convicted felon's civil rights are automatically restored. See *United States v. Hassan-El*, 5 F.3d 726, 734 (4th Cir. 1993). Thus, Tracy Parker's civil rights would not ordinarily have been restored due to the passage of time on

the date on which Kymberli delivered the ammunition to him. We think the district court was correct in sending the case to the jury. The condition with respect to Tracy Parker's conviction on September 9, 1998 was that he had been convicted and sentenced without remission. The general principle is that a condition once shown to exist is presumed to continue. *Central Pac. Ry. v. Alameda County*, 284 U.S. 463, 465 (1932). We are of opinion that principle applies here. The condition showing Tracy Parker's conviction and sentence is presumed to continue unless shown to the contrary, which has not been shown. The records of the Circuit Court for Prince George's County, Maryland are equally available to the government and to the defendant, and we are confident that had there been any change in the record of Tracy Parker's conviction, it would have been brought to our attention. Absent any such showing the district court properly sent the case to the jury.

### D.

Finally, Kymberli alleges error in the district court's jury instruction allowing the government to prove as an element of the § 922(d)(1) offense merely that her brother had "been convicted in a court of a crime punishable by imprisonment for a term exceeding one year."[4] Kymberli maintains that she was entitled to instructions

---

[4]The jury instructions on the elements of a § 922(d)(1) offense were submitted to the jury as follows:

The government must prove each of the following elements beyond a reasonable doubt in order to sustain its burden of proving the defendant guilty:

First, that on or about the date charged in the indictment, the defendant sold or otherwise disposed of ammunition;

Second, that the defendant acted knowingly;

Third, that the person to whom the ammunition was transferred had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year; and

Fourth, that at the time of the transfer of the ammunition, the defendant either knew or had reasonable cause to believe that the recipient of the ammunition had previously been convicted of a crime punishable for (sic) a term exceeding one year.

allowing the jury to find that Tracy Parker's prior conviction might fall under one of the two broad exceptions to the definition of a predicate felony set out in 18 U.S.C. § 921(20)(A) & (B). That is, Parker would have us find reversible error in that the district court refused to make a jury question of whether Tracy Parker's conviction for possession of cocaine with intent to distribute constituted one of the following:

> (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or

> (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

See 18 U.S.C. § 921(20)(A) & (B).

While the trial court is under a duty to instruct the jury on all of the elements of an offense in a criminal trial, it is certainly not required to instruct the jury on a defense for which there was no evidence adduced at trial. *United States v. Williams*, 604 F.2d 277, 281 (4th Cir. 1979). We are not long detained by Parker's suggestion that a jury was entitled to find that her brother's conviction for possession of cocaine with intent to distribute was exempted as a predicate felony under § 921(20)(A) because it was an offense relating to the regulation of business practices. Nor does Parker maintain that her brother was actually convicted of a misdemeanor of the sort exempted by § 921(20)(B). Thus, we conclude that there was no foundation in law or fact supporting instructions under § 921(20)(A) & (B).

The judgment of the district court is accordingly

*AFFIRMED.*