UNITED STATES of America,

v.

**James Millard REYNOLDS a/k/a Jamie Reynolds, Defendant.**

No. 1:03 CR 00116.

United States District Court,
W.D. Virginia,
Abingdon Division.

Sept. 14, 2004.

Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for the United States of America.

Michael A. Bragg, Bragg & Associates, Abingdon, Virginia, for Defendant.

## OPINION AND ORDER

JONES, Chief Judge.

The defendant in this criminal prosecution has filed a timely Motion to Suppress certain evidence law enforcement officers seized from him and certain statements made by him to those officers. I will deny the motion.

### I

James Millard Reynolds, the defendant, is charged in a superseding indictment with possession of a firearm after having been convicted of a felony, two counts of possession and use of a firearm in furtherance of a drug trafficking crime, and possession with intent to distribute methamphetamine. 18 U.S.C.A. §§ 922(g)(1), 924(c), (e) (West 2000 & Supp.2004); 21 U.S.C.A. § 841(a)(1) (West 1999). In connection with these charges, the defendant filed the present Motion to Suppress, requesting that his statement admitting the presence of a firearm on his person and disclosure of that weapon at the time of his statement be suppressed. The motion has been briefed and was argued at a hearing held on September 2, 2004. This opinion more fully explains my oral rulings from the bench at the hearing.

Three issues were raised by the motion and presented at the hearing: (1) whether failure to advise the defendant of his *Miranda* rights requires exclusion of firearms seized from the defendant's home by officers of the Carroll County Sheriff's Department on October 23, 2003; (2) whether failure to advise the defendant of his *Miranda* rights requires exclusion of certain statements made by him; and (3) whether, even if officers were required to advise the defendant of his *Miranda* rights, the defendant's statement nonetheless is admissible under the "public safety" exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence.

### II

Based on the evidence presented and in accordance with Federal Rule of Criminal Procedure 12(d), I find the following facts.

Defendant James Reynolds alleges that Steven Edmond Hawks knocked on the door of his home in the early morning hours of October 23, 2003. The knock awakened Reynolds, who was in bed. When Reynolds stepped outside, Hawks opened fire. Reynolds' girlfriend, Stephanie Eller, handed defendant a gun and he returned fire. After the shooting, Reynolds called the sheriff's department to report that Eller had suffered a gunshot wound to the face.

When the first sheriff's officers arrived at the scene, at approximately 1:54 a.m., Reynolds was waiting for them on the front porch. Neither of the testifying officers had any prior dealings with or knowledge about Reynolds. Upon entering Reynolds' home, the officers found Eller lying on the floor with a ricochet gunshot wound to the face. They immediately called for an ambulance. Reynolds then gave the officers Hawks' name and license plate number.

Officers observed a .25 caliber pistol on a table next to the front door. When asked whose weapon the .25 was, Reynolds identified it as the "gun I was shooting back with." Deputy Sheriff Edwards removed nine rounds from the weapon and placed it back on the table. The officers found six or seven spent shell casings in the vicinity of the front porch and casings from a second gun in the driveway. There were bullet holes both in defendant's manufactured home and in a car parked outside. Deputy Edwards, other officers, and Reynolds walked back and forth between Reynolds' home and the yard during their interaction. The officers did not advise Reynolds of his *Miranda* rights. Reynolds asked Deputy Edwards whether he could leave and repeatedly expressed his desire to go to the hospital. The officers informed Reynolds he was free to go and did not state that he was required to stay and answer questions. Although the offi-

cers parked their vehicles in a way that blocked Reynolds' car in the driveway, Reynolds did not ask to remove his car. Rather, he made a telephone call to a neighbor to request a ride to the hospital. Additionally, Reynolds' car appeared inoperable; it was covered in leaves and had a shattered window. Reynolds in fact left his home while officers still were conducting their on-scene investigation.

Ten minutes after the first responding officers had arrived, and as some of those officers were leaving, Sergeant Bourne of the sheriff's department arrived. Both Sergeant Bourne and Deputy Edwards considered Reynolds to be a victim and neither was fearful of him. At the same time, the whereabouts of the suspect were unknown and Reynolds appeared "hysterical." Emergency medical personnel had transported Eller to the hospital, but a one-year-old child remained in a back bedroom. Sergeant Bourne was fearful that Hawks would return and the shootout would resume, catching officers in the line of fire.

Upon his arrival, Sergeant Bourne did not ask any of the officers present whether they had frisked the defendant or searched for additional weapons. After ten to fifteen minutes at the scene, Sergeant Bourne asked the defendant whether he had any more weapons. Reynolds removed a loaded .22 caliber derringer from his pocket and made a short, indeterminate statement indicating some knowledge of the gun. Sergeant Bourne unloaded the gun and placed it on a counter. After Reynolds left his home, officers learned from the dispatcher that he had a felony conviction and they seized the gun.

### III

The Supreme Court held in a recent plurality opinion that failure to advise a defendant of his *Miranda* rights does

not require suppression of the physical fruits of the defendant's unwarned, but voluntary, statements. *United States v. Patane*, —— U.S. ——, ——, 124 S.Ct. 2620, 2626, 159 L.Ed.2d 667 (2004). The Court reasoned that *Miranda* is a prophylactic rule that protects against violations of the Self–Incrimination Clause, and the focus of that clause is protecting a criminal defendant from being compelled to testify against himself at trial. *Id.* at 2627–28. Introduction of nontestimonial evidence obtained as a result of voluntary statements does not violate the Self–Incrimination Clause. *Id.* at 2626. Even a deliberate failure to advise a defendant of his *Miranda* rights will not bar introduction of such evidence. *Id.* at 2629. "Potential violations occur, if at all, only upon the admission of unwarned statements into evidence at trial." *Id.*

■ Because unwarned, yet voluntary, statements fall outside the scope of the Self–Incrimination Clause, *see id.* at 2627, the only remaining inquiry is whether the defendant's response was voluntary under a due process analysis. *See Dickerson v. United States*, 530 U.S. 428, 444, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (explaining that *Miranda* requirements are separate from the voluntariness inquiry). The court considers "the totality of the circumstances" when making a voluntariness determination. *United States v. Elie*, 111 F.3d 1135, 1143–44 (4th Cir.1997), *abrogated on other grounds, United States v. Sterling*, 283 F.3d 216, 219 (4th Cir.2002). The critical inquiry is whether the defendant's "will was overborne." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Cristobal*, 293 F.3d 134, 140 (4th Cir.), *cert. denied*, 537 U.S. 963, 123 S.Ct. 396, 154 L.Ed.2d 319 (2002).

In this case, the officers asked Reynolds whether there were any weapons in the house. They had not advised Reynolds of his *Miranda* rights. In response, Reynolds reached into his pocket and pulled out the loaded .22 caliber derringer. The production of this nontestimonial evidence places this case within *Patane*.

■ The remaining inquiry is whether Reynolds produced the gun voluntarily. There is no evidence of police coercion. Reynolds is a mature individual who called for the officers to come to his home. Reynolds was not under arrest and his movement was not restricted, shown by the fact that his conversation with the officers moved between the front yard and the inside of his home. Nothing in the record suggests that Reynolds' "will was overborne" and his action was a voluntary response to invited officers' questioning.

Accordingly, failure to advise Reynolds of his *Miranda* rights does not require exclusion of the firearm under *Patane*. Defendant's Motion to Suppress the .22 caliber derringer is denied.

### IV

The second and third issues are whether the failure to advise the defendant of his *Miranda* rights requires exclusion of his statements and, even if *Miranda* warnings were necessary, whether his statements nonetheless are admissible under the "public safety" exception to the *Miranda* requirement.

### A

■ A person subjected to custodial interrogation is entitled to the procedural safeguards prescribed by *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Accord Dickerson v. United States*, 530 U.S. 428, 444, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (reaffirming *Miranda*). For purposes of *Miranda*, a person is "in custody" if, under the totality of the circumstances, his "freedom of ac-

tion is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (internal quotations omitted); *accord United States v. Photogrammetric Data Serv., Inc.* 259 F.3d 229, 240–42 (4th Cir.2001), *cert. denied,* 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002). The totality of the circumstances test is objective, turning on "the objective circumstances of the interrogation," and not on the "subjective views of either the interrogating law enforcement officers or of the person being questioned." *United States v. Parker,* 262 F.3d 415, 419 (4th Cir.2001) (citing *Stansbury v. California,* 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)).

■ In this case, Reynolds made an incriminating statement when he handed over the .22 caliber derringer he had been carrying. While it is true that officers did not advise Reynolds of his *Miranda* rights, such advice was not necessary. The facts do not demonstrate that Reynolds' freedom of action was curtailed to such a degree as to be "in custody." *Cf. Beckwith v. United States,* 425 U.S. 341, 347, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) (finding defendant was not in custody when police questioned defendant in his own home and he was at all times free to leave). The officers told Reynolds he was free to leave. Reynolds was not under arrest and was not restrained. Reynolds made a telephone call to a neighbor and walked back and forth between the inside of his home and his front yard. Indeed, he left before officers finished their investigation.

For these reasons, I find that the interaction between Reynolds and the officers was not a custodial interrogation for *Miranda* purposes. Therefore, the officers were not required to administer *Miranda* warnings and any statements made by Reynolds during that encounter are admissible.

## B

■ Even if a defendant is in custody for purposes of *Miranda,* the public safety exception to the *Miranda* requirement permits pre-*Miranda* questioning at the scene regarding matters relevant to the safety of police or members of the public. *New York v. Quarles,* 467 U.S. 649, 655–56, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (admitting statement made by a defendant arrested in a supermarket and wearing an empty shoulder harness); *accord United States v. Mobley,* 40 F.3d 688, 692–93 (4th Cir.1994) (expressly recognizing the exception in the Fourth Circuit). The public safety exception is narrowly construed and is applicable only when there is an objectively reasonable need to protect against public danger. *See Quarles,* 467 U.S. at 656, 658, 104 S.Ct. 2626; *Mobley,* 40 F.3d at 692. The exception "is usually applied where a police officer has asked a suspect if the suspect is carrying a firearm." Elizabeth Williams, Annotation, *Post–Quarles Cases,* 142 A.L.R. Fed. 229, § 2[a] (2004).

In the case currently before the court, the defendant's home was the scene of a shooting. Officers arrived to find Reynolds' girlfriend lying on the floor with a gunshot wound. There were numerous bullet holes in Reynolds' home, and officers found one gun on a table next to the front door. Although ten to fifteen minutes had passed since officers first arrived at the scene, Hawks still was at large and Reynolds was upset. There was a chance Hawks would return and the shooting would resume, catching officers and Reynolds' small child in the crossfire. As defendant himself explains, "[t]here was tension and concern in the air because the whereabouts of the author of this violent attack were unknown; and there was considerable apprehension that he might still be on or about the premises." (Def.'s Mem. Supp. Mot. Suppress at II.A.). It is

under these circumstances that Sergeant Bourne asked Reynolds whether he had any more weapons.

■ Comparing these facts to those in other public safety exception cases, I find that Sergeant Bourne did have an objectively reasonable concern about immediate danger to the officers and Reynolds' child that justifies his limited inquiry regarding the presence of weapons. *Compare United States v. Young,* 58 Fed.Appx. 980, 982 (4th Cir.2003) (unpublished) (applying the public safety exception where officers asked a handcuffed defendant whether there were any guns in the house and other individuals, who may have been armed, were present in the home), *with Mobley,* 40 F.3d at 693 (holding circumstances were not sufficiently exigent when, during a routine arrest, officers asked a naked defendant whether he had any weapons in the house and those officers already had discovered that the defendant lived alone and no one else was present). For this reason, even if *Miranda* warnings were necessary, Reynolds' statement is nonetheless admissible under the public safety exception.

## V

For the reasons set forth above, it is **ORDERED** that the defendant's Motion to Suppress is denied.